DEBRA WONG YANG, SBN 123289
  dwongyang@gibsondunn.com
MATTHEW A. HOFFMAN, SBN 227351
  mhoffman@gibsondunn.com
ROSS HALPER, SBN 253488
  rhalper@gibsondunn.com
ANDREW G. PAPPAS, SBN 266409
  apappas@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Attorneys for Defendants
UNIVERSITY OF SOUTHERN CALIFORNIA
& CHIEF JOHN THOMAS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYVEN VINSON, an Individual; CHRISTIAN SUTTON, an Individual; OLAOLUWA BAYODE, an Individual; DEBBIE RUMBO, an Individual; FRANCES WANG, an Individual; JASON SNEED, an Individual; and TEREMY JACKSON, an Individual, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES, a Public Entity; UNIVERSITY OF SOUTHERN CALIFORNIA, a Private Corporate Entity; CHIEF JOHN THOMAS, in his individual and official capacity as Chief of USC Department of Public Safety; LAPD OFFICER CARLYLE; LAPD OFFICER ROSE; LAPD OFFICER MORAN; LAPD OFFICER ROCKETT; LAPD OFFICER PEAKE; LAPD OFFICER CHIU; LAPD OFFICER WOLFCHIEF; LAPD OFFICER AYALA; LAPD OFFICER CORDOBA; LAPD SERGEANT WASHINGTON; LAPD OFFICER BARRIENTOS; LAPD OFFICER MARX; and DOES 1-10, Inclusive, <br><br> Defendants. | CASE NO. 14-4488-PLA <br><br> **DEFENDANTS UNIVERSITY OF SOUTHERN CALIFORNIA'S AND CHIEF JOHN THOMAS'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** <br><br> [Fed R. Civ. P. 12(b)(6) & 9(b)] <br><br> **Hearing:** <br> Date:      March 3, 2015 <br> Time:      10:00 a.m. <br> Place:     Courtroom G, 9th Floor <br> Judge:    Hon. Paul L. Abrams, U.S. Magistrate Judge |

Gibson, Dunn &
Crutcher LLP

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 3, 2015 at 10:00 a.m., or as soon thereafter as the matter may be heard in courtroom G, 9th Floor of the above-captioned court, located at 312 North Spring Street, Los Angeles, California, Defendants University of Southern California ("USC") and Chief John Thomas ("Chief Thomas") (collectively, "USC Defendants") will, and hereby do, move to dismiss Plaintiffs' Second Amended Complaint ("SAC") and each of the causes of action therein in the above-entitled matter pursuant to Rule 12(b)(6), on the basis that the SAC fails to state facts sufficient to constitute a cause of action, and Rule 9(b) of the Federal Rules of Civil Procedure, on the basis that Plaintiffs have failed to plead with sufficient particularity the elements of their claims.  Because the SAC fails to state facts sufficient to state a cause of action and fails to plead fraud-based claims with sufficient particularity, USC Defendants request that the Court dismiss Plaintiffs' SAC with prejudice.

This Motion is based on this Notice and Motion, the memorandum of points and authorities set forth below, the records and files in this matter, including all matters of which judicial notice may be taken, and on such oral argument and evidence as may be presented at or before the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on January 20, 2015.[1]

Dated: January 23, 2015

GIBSON, DUNN & CRUTCHER LLP

By:  /s/ Debra Wong Yang

Debra Wong Yang

Attorneys for Defendant
UNIVERSITY OF SOUTHERN CALIFORNIA

---

[1]   USC attempted to meet and confer with Plaintiffs on January 15, but Plaintiffs' counsel, Mr. Dorton, indicated January 20 was the earliest date he was available.

# TABLE OF CONTENTS

Page

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

II.    PROCEDURAL HISTORY ................................................................ 3

III.   LEGAL STANDARDS .................................................................... 4

IV.    ARGUMENT ................................................................................ 4

    A.   Plaintiffs' Causes of Action for Civil Rights Violations Should Be
       Dismissed ............................................................................ 4

        1.   Plaintiffs' Cause of Action for Excessive Force Should Be
           Dismissed .................................................................. 5

        2.   Plaintiffs' Cause of Action for Failure to Intervene Should Be
           Dismissed .................................................................. 8

        3.   Plaintiffs' *Monell* Claim Should Be Dismissed ........................... 10

        4.   Plaintiffs' Equal-Protection Cause of Action Should Be
           Dismissed .................................................................. 12

    B.   Plaintiffs' Cause of Action for Intentional Infliction of Emotional
       Distress Should Be Dismissed ................................................... 14

        1.   Plaintiffs Do Not Allege Any Extreme and Outrageous Conduct
           by DPS ..................................................................... 14

        2.   Plaintiffs Do Not Adequately Allege Causation ........................... 15

    C.   Plaintiffs' Cause of Action for Assault Should Be Dismissed ............... 15

        1.   Plaintiffs Do Not Allege That a DPS Doe Threatened to Touch
           Anyone ..................................................................... 15

        2.   Plaintiffs Do Not Allege Any Theory by Which a DPS Doe
           Could Be Held Liable for Assault ....................................... 16

    D.   Plaintiffs' Claim for Violation of the Unruh Act Should Be Dismissed . 17

        1.   Plaintiffs Do Not Allege Willful and Affirmative Misconduct ..... 18

        2.   Plaintiffs Do Not Allege That They Were Denied Applicable
           Benefits ................................................................... 19

        3.   Plaintiffs Do Not Adequately Allege Causation ........................... 19

    E.   Plaintiffs' Cause of Action for False Promise Should Be Dismissed ...... 20

Gibson, Dunn & Crutcher LLP

1.      Plaintiffs Have Not Alleged Any Actionable False Statement ..... 20

2.      Plaintiffs Have Not Adequately Alleged That Dr. Jackson Knew His Statement Was False or That He Intended to Induce Reliance ........................................................................................ 22

3.      Plaintiffs Have Not Pleaded Actual or Reasonable Reliance ........ 22

4.      Plaintiffs Have Not Pleaded Causation ......................................... 23

5.      Plaintiffs Have Not Adequately Pleaded Damages ....................... 25

F.     Plaintiffs' Claim for Negligent Misrepresentation Should Be Dismissed ......................................................................................... 25

V.    CONCLUSION ...................................................................................... 25

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Arpin v. Santa Clara Valley Transp. Agency*,
  261 F.3d 912 (9th Cir. 2001) .................................................................... 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................... *passim*

*Avina v. United States*,
  681 F.3d 1127 (9th Cir. 2012) ................................................................ 16

*Ayer v. Robinson*,
  163 Cal. App. 2d 424 (1958) ................................................................... 17

*Barren v. Harrington*,
  152 F.3d 1193 (9th Cir. 1998) ................................................................ 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................... 4, 15

*Blankenhorn v. City of Orange*,
  485 F.3d 463 (9th Cir. 2007) .................................................................... 6

*Board of Comm'rs of Bryan Cnty. v. Brown*,
  520 U.S. 397 (1997) ............................................................................. 12

*Brown v. City & Cnty. of San Francisco*,
  No. C 11-02162 LB, 2014 U.S. Dist. LEXIS 48386 (N.D. Cal. Apr. 7,
  2014) ...................................................................................................... 6

*Burns v. City of Concord*,
  No. C 14-00535 LB, 2014 WL 5794629 (N.D. Cal. Nov. 6, 2014) ................. 11, 12

*Cadlo v. Owens-Illinois, Inc.*,
  125 Cal. App. 4th 513 (2004) ................................................................. 22

*Chuman v. Wright*,
  76 F.3d 292 (9th Cir. 1996) ...................................................................... 5

*City Solutions, Inc. v. Clear Channel Commc'ns, Inc.*,
  365 F.3d 835 (9th Cir. 2004) .................................................................. 24

*Coastal Abstract Serv. v. First Am. Title Ins. Co.*,
  173 F.3d 725 (9th Cir. 1999) .................................................................. 21

*Connick v. Thompson*,
  131 S. Ct. 1350 (2011) .......................................................................... 12

*Cunningham v. Gates*,
  229 F.3d 1271 (9th Cir. 2000) ............................................................. 8, 10

*Davis v. City of Ellensburg*,
  869 F.2d 1230 (9th Cir. 1989) ................................................................ 12

*Diediker v. Peelle Fin. Corp.*,
  60 Cal. App. 4th 288 (1997) ................................................................... 21

*Dielsi v. Falk,*
   916 F. Supp. 985 (C.D. Cal. 1996) ........................................................................ 25

*Doe v. Gangland Prods.,*
   730 F.3d 946 (9th Cir. 2013) ................................................................................. 20

*Felarca v. Birgeneau,*
   Case No. 11-CV-5719 YGR, 2014 WL 206762 (N.D. Cal. Jan. 17,
   2014) ....................................................................................................................... 8

*First Advantage Background Servs. Corp. v. Private Eyes, Inc.,*
   569 F. Supp. 2d 929 (N.D. Cal. 2008) .................................................................. 20

*Gates v. Superior Court,*
   32 Cal. App. 4th 481 (1995) .................................................................................. 19

*Gordon v. Degelmann,*
   29 F.3d 295 (7th Cir. 1994) ..................................................................................... 9

*Greater Los Angeles Agency on Deafness, Inc. v. CNN, Inc.,*
   742 F.3d 414 (9th Cir. 2014) ................................................................................. 18

*Hansen v. Black,*
   885 F.2d 642 (9th Cir. 1989) ................................................................................. 13

*Hartmann v. Cal. Dep't of Corrections & Rehab.,*
   707 F.3d 1114 (9th Cir. 2013) ............................................................................... 13

*Hughes v. Pair,*
   46 Cal. 4th 1035 (2009) ......................................................................................... 14

*Jones v. Williams,*
   297 F.3d 930 (9th Cir. 2002) ..........................................................................*passim*

*Koebke v. Bernardo Heights Country Club,*
   36 Cal. 4th 824 (2005) ........................................................................................... 18

*Leer v. Murphy,*
   844 F.2d 628 (9th Cir. 1988) ................................................................................... 5

*Meehan v. Los Angeles County,*
   856 F.2d 102 (9th Cir. 1988) ................................................................................. 12

*Mirkin v. Wasserman,*
   5 Cal. 4th 1082 (1993) ........................................................................................... 24

*Monell v. Department of Social Services,*
   436 U.S. 658 (1978) .........................................................................................*passim*

*Monteilh v. County of Los Angeles,*
   820 F. Supp. 2d 1081 (C.D. Cal. 2011) .................................................................. 9

*Ramirez v. Butte-Silver Bow Cnty.,*
   298 F.3d 1022 (9th Cir. 2002) ................................................................................. 9

*Shabazz v. Parris,*
   No. CV 12-5803-SVW (JEM), 2012 WL 5388151 (C.D. Cal. Nov. 2,
   2012) ..................................................................................................................... 11

UNIVERSITY OF SOUTHERN CALIFORNIA DEFENDANTS' MOTION TO DISMISS

*Smith v. Cnty. of Santa Cruz,*
No. 13-cv-00595 LHK, 2014 WL 3615492 (N.D. Cal. July 22, 2014) .................. 11

*Tasia R. v. Grossmont Union High School District,*
No. 13cv2784-WQH-DHB, 2014 WL 3734475 (S.D. Cal. July 28,
2014) ....................................................................................................................... 9

*Ting v. United States,*
927 F.2d 1504 (9th Cir. 1991) .................................................................................. 9

*Trevino v. Gates,*
99 F.3d 911 (9th Cir. 1996) .............................................................................. 11, 12

*Tsao v. Desert Palace, Inc.,*
698 F.3d 1128 (9th Cir. 2012) ............................................................................... 11

*Turner v. Whittel,*
2 Cal. App. 2d 585 (1934) ..................................................................................... 17

*United States v. Koon,*
34 F.3d 1416 (9th Cir. 1994) ................................................................................... 8

*Villegas v. Gilroy Garlic Festival Assn.,*
541 F.3d 950 (9th Cir. 2008) ................................................................................. 11

*Wilson v. Century 21 Great W. Realty,*
15 Cal. App. 4th 298 (1993) .................................................................................. 21

*Zumbrun v. Univ. of S. Cal.,*
25 Cal. App. 3d 1 (1972) ....................................................................................... 24

## Statutes

42 U.S.C. § 1983 ...............................................................................................*passim*

Cal. Civ. Code § 51 ................................................................................................. 19

## Other Authorities

Judicial Council of Cal., Civil Jury Instructions No. 3060 (2012) ...................... 18, 20

Judicial Council of Cal., Civil Jury Instructions No. 430 (2012) ............................ 20

## Rules

Fed. R. Civ. P. 8 .................................................................................................... 22

Fed. R. Civ. P. 9(b) ................................................................................. 1, 4, 20, 23

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 4

UNIVERSITY OF SOUTHERN CALIFORNIA DEFENDANTS' MOTION TO DISMISS

Gibson, Dunn &
Crutcher LLP

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

3      The Court granted Plaintiffs leave to amend their First Amended Complaint

4  ("FAC"), but warned that they had just "**one final opportunity** to present a complaint that

5  includes **all** facts they want the Court to consider in determining the sufficiency of the

6  allegations."  (Doc. 46 at 1.)  Plaintiff's Second Amended Complaint ("SAC") should be

7  dismissed with prejudice because even in their "final opportunity," Plaintiffs do not and

8  cannot allege facts sufficient to support even a single cause of action against Defendants

9  University of Southern California ("USC"), USC Department of Public Safety ("DPS")

10  Chief John Thomas ("Chief Thomas"), or the unnamed DPS Doe Defendants ("DPS

11  Does") (collectively, "USC Defendants").[2]

12      Plaintiffs have brought nearly the same claims, based on almost identical

13  allegations, concerning the arrest of seven students by the Los Angeles Police Department

14  ("LAPD") in the early morning of May 4, 2013.  Plaintiffs have made only a handful of

15  relevant changes to the factual allegations in their FAC.  *First*, Plaintiffs omitted their

16  baseless allegations that USC used the hours after the noise complaint to organize a use of

17  force by LAPD.  (FAC ¶ 20, 74.)  *Second*, while the FAC detailed that "[v]ideo footage"

18  shows that "Defendant LAPD Officers Rose and Moran handcuff[ed] and abrasively

19  seiz[ed]" non-party Nathanial Howard (FAC ¶ 25), the SAC vaguely asserts that "several

20  officers surrounded [Mr. Howard] . . . abrasively seizing him," apparently in order to

21  create the misimpression that DPS Does may have participated in this activity.  (SAC

22  ¶ 33.)  *Third*, Plaintiffs allege that "[a] *group* of [DPS Does] participated directly in, and

23  *upon information and belief* actually organized a large 'skirmish line'. . . ."  (SAC ¶ 32

24  (emphasis added).)  *Fourth*, whereas Plaintiffs previously alleged that a DPS Doe "was

25  standing no more than fifteen away" during plaintiff Teremy Jackson's entire arrest (FAC

26  _____

27  [2]  Plaintiffs have added USC and Chief Thomas as Defendants to their *Monell* cause of
action.  They have also added Chief Thomas as a Defendant in their Equal Protection
claim.  They have dropped USC as a Defendant in their causes of action for Equal
28  Protection and Intentional Infliction of Emotional Distress.

¶ 38), Plaintiffs now allege that "[d]uring [Mr.] Jackson's arrest a [DPS Doe] pulled up in his marked patrol vehicle, got out and stood with his hand on his gun no more than fifteen feet away, and watched the entire arrest take place" (SAC ¶ 45).  **Fifth,** Plaintiffs assert generically and only "[u]pon information and belief" that Chief Thomas "received numerous complaints of excessive police interference from the black student community at the hands of USC DPS officers" (SAC ¶¶ 122, 165), and then plead any number of legal conclusions about Chief Thomas's supposed complicity in the events of May 4th (*e.g.*, SAC ¶¶ 165–67).  But Plaintiffs still cannot plead facts showing that any USC Defendant was an "integral participant" in any constitutional violation or actually caused them any injury.  Plaintiffs thus still fail to state a claim under 42 U.S.C. § 1983, or for violation of the Unruh Act, intentional infliction of emotional distress, or assault.

Plaintiffs also attempt to base two of the civil rights causes of action on USC's supposed "long standing practice and custom of subjecting African-American USC students to unequal and excessively forceful police scrutiny and interference."  (SAC ¶ 115.)  Plaintiffs plead no facts in support of that assertion, because none exists.  The *only* fact they allege—that in April 2013, nine "LAPD squad cars and officers in riot gear arrived at a house party hosted by African-American students two (2) blocks from the USC campus" in response to a noise complaint (*id.* ¶ 16)—in no way suggests that USC has a "practice and custom" of using excessive force.  Indeed, Plaintiffs do not allege that LAPD or DPS used *any* force in April 2013 incident or during any other incident.

Plaintiffs' claims for false promise and negligent misrepresentation are virtually unchanged from the FAC.  Their conclusory allegations again fail to meet nearly all of the elements required to plead a false promise claim.  And USC's alleged promise of future conduct still cannot support a claim for negligent misrepresentation under California law.

Plaintiffs have repeatedly failed to state facts sufficient to support any claim against the USC Defendants, because facts do not exist to support any of their theories of liability. The SAC should be dismissed with prejudice in order to protect the USC Defendants from continued litigation that is clearly without any basis in law, fact, or common sense.

Gibson, Dunn & Crutcher LLP

2

## II.   PROCEDURAL HISTORY

Plaintiffs' original Complaint asserted claims against the USC Defendants for violation of civil rights, intentional infliction of emotional distress, assault and battery, and violation of the Unruh Act.  USC moved to dismiss those claims on the ground that "the Complaint does not contain even a single allegation that any named or unnamed DPS safety officer actually took or failed to take any specific action."  (Doc. 25 at 1–2.)

The Court properly dismissed all claims in the original Complaint against the USC Defendants.  (Doc. 30.)  The Court dismissed Plaintiffs' causes of action under section 1983 because "the Complaint include[d] no factual allegations pertaining to any of the individual unidentified USC DPS officers," and because "no well-pleaded factual allegations in the Complaint plausibly suggest that any USC DPS 'Doe' defendant took any action, participated in another's acts, or failed to perform an act that caused any constitutional deprivation."  (*Id.* at 7–9.)  Similarly, the Court dismissed the Unruh Act claim because "Plaintiff's Complaint contains no factual allegations of any willful, affirmative misconduct by USC."  (*Id.* at 11.)  And the Court dismissed Plaintiffs' intentional infliction of emotional distress and assault and battery claims because "plaintiffs' Complaint [did] not set forth any factual allegations that any USC DPS officer touched any plaintiff, used excessive force against any plaintiff, beat any plaintiff, arrested any plaintiff, or issued an arrest report pertaining to any plaintiff."  (*Id.* at 14.)

The original Complaint also contained identical causes of action for fraudulent and intentional misrepresentation, based on a USC employee's alleged representation that USC would provide academic accommodations to Plaintiffs in the aftermath of their arrests.  The Court dismissed those claims as well, finding that Plaintiffs had failed to plead several of the elements required for those causes of action.  (Doc. 30 at 12–13.)

Plaintiffs filed a FAC, which USC moved to dismiss on grounds generally similar to those articulated in the Court's Order dismissing the original Complaint and in USC's Motion to Dismiss the original Complaint.  After a lengthy hearing on USC's Motion to Dismiss, the Court granted Plaintiffs leave to amend their FAC, but warned that they had

just "**one final opportunity** to present a complaint that includes **all** facts they want the Court to consider in determining the sufficiency of the allegations." (Doc. 46 at 1.)

### III.   LEGAL STANDARDS

A complaint must be dismissed under Rule 12(b)(6) unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court must accept factual allegations as true for purposes of a motion to dismiss, that "tenet . . . is inapplicable to legal conclusions" or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* And after all "conclusory statements" are stripped away, the factual allegations that remain must do more than "create[] a suspicion [of] a legally cognizable right of action" and must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (quotation marks omitted). An even more rigorous standard applies to those claims sounding in fraud, because Rule 9(b) requires "the circumstances constituting fraud" to be pled "with particularity." Fed. R. Civ. P. 9(b).

### IV.   ARGUMENT

**A.   Plaintiffs' Causes of Action for Civil Rights Violations Should Be Dismissed**

Plaintiffs now assert four causes of action against USC, Chief Thomas, and DPS Does under 42 U.S.C. § 1983, based on (1) an unreasonable and excessive use of force, (2) failure to intervene, (3) *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and (4) deprivation of equal protection. Each of those causes of action should again be dismissed, because Plaintiffs still fail to plead facts sufficient to support them.

"42 U.S.C. § 1983 creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "[U]nder section 1983, the plaintiff must demonstrate that (1) the action occurred 'under color of state law' and (2) the action resulted in the deprivation of a constitutional right or federal statutory right." *Id.* "A person deprives another 'of a constitutional right, within the meaning of § 1983, if he does

an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiffs complain]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (emphasis in original).

"The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer*, 844 F.2d at 633. And "in order to state a claim against a particular defendant for violation of his or her civil rights under 42 U.S.C. § 1983, each plaintiff must allege that a specific defendant, while acting under color of state law, deprived him or her of a right guaranteed under the Constitution or a federal statute." (Doc. 30 at 8.) A defendant thus cannot be held "liable because of his membership in a group without a showing of individual participation in the unlawful conduct." *Jones*, 297 F.3d at 935 (citing *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996)). The Ninth Circuit "require[s] the plaintiff[s] to first establish the 'integral participation' of the officers in the alleged constitutional violation," because "to find individual officers liable when there is no evidence to link them to specific actions would [be] erroneous as a matter of law." *Id*. at 935, 937 (quoting *Chuman*, 76 F.3d at 294).

Here, Plaintiffs' section 1983 claims should again be dismissed because, even if USC, Chief Thomas, or DPS Does were acting under color of state law—which USC does not concede and which Plaintiffs have not pleaded facts adequate to show—Plaintiffs have not pleaded any facts even suggesting that any individual DPS Doe took (or failed to take) any action so as to deprive any Plaintiff of any constitutional or statutory right.

### 1. Plaintiffs' Cause of Action for Excessive Force Should Be Dismissed

#### a. Plaintiffs Do Not Allege Any DPS Doe Was an Integral Participant in Any Constitutional Violation

Plaintiffs do not allege any facts to suggest that any DPS Doe used excessive force or was an "integral participa[nt]" in any constitutional violations that may have occurred. *Jones*, 297 F.3d at 935. Instead, Plaintiffs merely assert the conclusion that an entire *group* of defendants used excessive force, supposedly by "show[ing] up in riot gear,

Gibson, Dunn & Crutcher LLP

1   issu[ing] contradictory orders, and . . . corral[ing] African-American and minority students

2   away from the scene while simultaneously using a 'skirmish line' to block the students'

3   exit." (SAC ¶ 3; *see also* SAC ¶¶ 29, 38–39, 41, 52–53, 57, 65, 70, 76.)  The Ninth

4   Circuit has rejected that kind of "team effort" approach to liability. *Jones*, 297 F.3d at

5   935.  Instead, the Ninth Circuit and district courts have consistently required plaintiffs to

6   show that each defendant was an "integral participa[nt]" in the alleged excessive force.

7      In *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007), the Ninth Circuit

8   explained that while "'integral participation does not require that each officer's actions

9   themselves rise to the level of a constitutional violation,'" "it does require some

10   fundamental involvement in the conduct that allegedly caused the violation." *Id*. at 481

11   n.12 (internal quotation omitted).  The court concluded that a police officer "who at most

12   provided crowd control, did not participate in any integral way in the arrest." *Id*.; *see also*

13   *Brown v. City & Cnty. of San Francisco*, No. C 11-02162 LB, 2014 U.S. Dist. LEXIS

14   48386, at *34–35 (N.D. Cal. Apr. 7, 2014) (deputy sheriff "was not an integral participant

15   in the allegedly excessive force" used by other deputy sheriffs, where he participated in

16   "the initial struggle in the hallway," but "then walked up the hallway as the other deputies

17   led Mr. Brown to [a] safety cell and . . . stood outside the doorway to the cell for a short

18   time before walking away"; he "did not direct the other deputies"; and there was no

19   "evidence that he had a prior awareness of a decision to use excessive force").

20      Here, Plaintiffs' allegations that a group of DPS Does participated in a skirmish line

21   at most demonstrate that these DPS Does provided crowd control, and thus are insufficient

22   to show that any one of them was an integral participant in the alleged use of excessive

23   force by LAPD officers.  Moreover, the vague claims about DPS Does' conduct that

24   Plaintiffs do make are simply implausible in light of—and stand in stark contrast to—their

25   highly detailed allegations about specific LAPD officers' particular actions on May 3–4,

26   2013. (*See*, *e.g.*, SAC ¶¶ 35–37, 40, 42, 44, 46–47, 58, 60–61, 66.)  That Plaintiffs make

27   such exhaustive excessive-force allegations against individual LAPD officers makes the

28   continuing absence of any similar allegations against individual DPS Does all the more

1     glaring, and makes Plaintiffs' excessive-force claims against DPS Does entirely

2     implausible.  Likely recognizing as much, Plaintiffs' SAC actually attempts to *delete*

3     specific factual allegations about LAPD officers' conduct in favor of more generalized

4     assertions.  In paragraph 33, for example, Plaintiffs assert that "*several officers*

5     surrounded Nathaniel Howard ('Howard'), host of the 1222 party, against the side of his

6     home, abrasively seizing him." (SAC ¶ 33 (emphasis added).)  Plaintiffs previously

7     alleged, however, that "[v]ideo footage taken that night . . . *shows Defendant LAPD*

8     *Officers Rose and Martin handcuffing, and abrasively seizing*" Mr. Howard, who is not a

9     plaintiff in any event.  (FAC ¶ 25 (emphasis added).)  There and elsewhere, Plaintiffs'

10    vague assertions about unidentified officers' conduct (*e.g.*, SAC ¶¶ 36, 54, 66), read in

11    context, cannot plausibly suggest that any DPS Doe actually participated in any way in the

12    use of excessive force.  That is especially true in light of Plaintiffs' previous admission

13    that DPS Does were readily "distinguishable" from LAPD police officers based on the

14    color of their uniforms (Doc. 28 at 4 n.4).  *Iqbal*, 556 U.S. at 678 ("The plausibility

15    standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully").

16           **b.**    **Plaintiffs Do Not and Cannot Show That Any DPS Doe Caused**

17                  **Excessive Force to Be Used**

18        Unable to show that any DPS Doe actually used excessive force, Plaintiffs assert

19    without any factual support that "at least one USC DPS Supervising Officer" somehow

20    "direct[ed]" or "approv[ed]" of LAPD officers' use of allegedly excessive force.  (SAC

21    ¶ 15.)  Apparently underlying those assertions are Plaintiffs' similarly unsupported

22    conclusions—based only on "information and belief"—that "USC DPS **and not the**

23    **LAPD** has the authority to conduct crime prevention activities, investigations and

24    custodial arrests on the USC Campus, and in the area immediately surrounding the USC

25    campus"; that "LAPD would be required to notify and coordinate with the USC DPS if

26    they were to enter onto the USC campus or the area immediately surrounding the campus

27    to conduct policing activities thereon"; and that "USC Doe Defendants actually requested

28    or organized the showing of force, or otherwise exaggerat[ed] the need for an

Gibson, Dunn &
Crutcher LLP

7

UNIVERSITY OF SOUTHERN CALIFORNIA DEFENDANTS' MOTION TO DISMISS

unreasonable showing of force, during the incident in question, on May 3–4, 2013." (*Id.* ¶¶ 84–85, 90(a); *see also id.* ¶ 28 ("Upon information and belief, Plaintiffs allege that when police units did arrive, USC DPS prompted and through false and exaggerated reporting deliberately organized and/or requested an excessively forceful police response to a simple noise complaint").)  Those "threadbare conclusions" are not only unsupported by any factual allegations; they are wholly implausible and clearly inadequate to state a claim for relief.  *See Iqbal*, 556 U.S. at 678–79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

This is not a case like *Felarca v. Birgeneau*, Case No. 11-CV-5719 YGR, 2014 WL 206762 (N.D. Cal. Jan. 17, 2014), in which the plaintiffs alleged specific facts showing that particular University of California administrators were aware of police officers' apparent use of excessive force during an afternoon raid but nonetheless "order[ed] police, or allow[ed] them to continue with, a use of force and arrests in the evening raid." *Id.* at *5.  Plaintiffs do not—and cannot truthfully—allege any comparable facts here.

### 2.    Plaintiffs' Cause of Action for Failure to Intervene Should Be Dismissed

Although "'*police* officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen,'" "officers can be held liable for failing to intercede *only* if they had an opportunity to intercede." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (quoting *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994) (emphases added)).  Police "officers who were not present at the time of the" complained of conduct obviously "could not intercede," and even officers who were present must have had a "realistic opportunity" to intercede to be held liable under section 1983. *Id.* at 1289–90.  Here, Plaintiffs fail to plead facts showing that any individual DPS Doe had a duty to intervene or a "realistic opportunity" to do so.

#### a.    Plaintiffs Have Not Shown That Any DPS Doe Had a Duty to Intervene

Even if Plaintiffs could show that USC is a state actor (and they have not done so), Plaintiffs have not pleaded facts showing that DPS Does had a duty to intercede when

1    LAPD police officers allegedly violated their rights.

2         Plaintiffs cannot show that *DPS Does*—private school employees, not police

3    officers or even public employees—had a duty to intercede when *LAPD police officers*

4    allegedly used excessive force.  In *Tasia R. v. Grossmont Union High School District*, No.

5    13cv2784-WQH-DHB, 2014 WL 3734475, at *5–6 (S.D. Cal. July 28, 2014), for

6    example, the court held that three school officials did not have a duty to intercede when a

7    police officer assigned to their school allegedly used excessive force on a student.  As the

8    court explained in *Monteilh v. County of Los Angeles*, 820 F. Supp. 2d 1081 (C.D. Cal.

9    2011), the "Constitution does not require all public employees to intercede, outside their

10   own bureaucratic hierarchies, on behalf of persons whose rights are in jeopardy."  *Id.* at

11   1093 (quoting *Gordon v. Degelmann*, 29 F.3d 295, 298 (7th Cir. 1994)).

12        Moreover, the Ninth Circuit has held that even bystander *police officers* have a duty

13   to intervene to prevent a violation *only* when they know or have reason to know it is a

14   constitutional violation, *see Ramirez v. Butte-Silver Bow Cnty.*, 298 F.3d 1022, 1029–30

15   (9th Cir. 2002), and *only* when they can actually prevent it from occurring, *see Ting v.*

16   *United States*, 927 F.2d 1504, 1511–12 (9th Cir. 1991).  Plaintiffs still do not allege facts

17   showing that any DPS Doe knew anything about the specific events that precipitated

18   Plaintiffs' arrests, or that any DPS Doe knew or could have known that the force LAPD

19   officers were allegedly using was unconstitutionally excessive under the circumstances.

20   Plaintiffs do not explain, for example, how any DPS Doe could have known how "tightly"

21   an LAPD officer allegedly "grabbed [Ms. Wang's] arms" during her arrest, or why the

22   LAPD officers arresting Ms. Vinson found it necessary to restrain her.  (SAC ¶¶ 54, 47.)

23   And Plaintiffs plead no facts showing that any DPS Doe could *realistically* or *lawfully*

24   have intervened to prevent any LAPD officer's arrest of any Plaintiff, as discussed below.

25        **b.    Plaintiffs Have Not Pleaded Facts Showing That Any DPS Doe**

26             **Had a Realistic Opportunity to Intervene but Failed to Do So**

27        Even assuming DPS Does had a duty to intervene, Plaintiffs allege no facts to show

28   that any individual DPS Doe actually had a "*realistic opportunity*" to intercede yet failed

to do so.  *Cunningham*, 229 F.3d at 1289–90 (emphasis added).

Plaintiffs allege that several of the arrests took place within view and earshot of the skirmish line and one or more unnamed DPS Does not in the skirmish line.  (SAC ¶¶ 50, 57, 63).  But Plaintiffs do *not* allege any facts to show that any DPS Doe could realistically (or lawfully) have interceded to prevent any LAPD officer's arrest of any one of the Plaintiffs.  Indeed, the one new fact Plaintiffs allege in that regard—that "*[d]uring [Mr.] Jackson's arrest a USC DPS Doe Defendant pulled up in his marked patrol vehicle,* got out, and stood with his hand on his gun no more than fifteen feet away, and watched the entire arrest take place" (SAC ¶ 45 (emphasis added))—is internally contradictory and actually undermines Plaintiffs' claim:  the DPS Doe who "pulled up in his marked patrol vehicle" "*[d]uring*" Mr. Jackson's arrest could not have watched the entire arrest and certainly could not have prevented it.  Unable to plead facts in support of their claim, Plaintiffs merely assert that "each said Defendant had ample and reasonably sufficient time and opportunity to intervene and prevent the wrongful conduct of the other officers, to prevent the injuries and damages and to timely intercede so Plaintiffs would not be mistreated and abused." (*Id.* ¶ 105.)  Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to state a cause of action, especially here, where they are facially implausible.  *Iqbal*, 556 U.S. at 678.  And even if, as Plaintiffs claim, the Memorandum of Understanding between USC and the LAPD generally permitted DPS Does to intervene in police activity (*see* SAC ¶ 105), that would say nothing about whether any DPS Doe actually had a realistic opportunity to intercede to prevent any of the specific arrests at issue here.

### 3.    Plaintiffs' *Monell* Claim Should Be Dismissed

The Court should also dismiss Plaintiffs' new *Monell* claim against both USC and Chief Thomas "in his Individual and Official Capacity."  Plaintiffs do not and cannot plead facts sufficient to show liability here.

***First***, because *Monell* claims can be brought only against *entities*, not against *individuals*, Plaintiffs' *Monell* claim against Chief Thomas as an individual should be

1  dismissed.  *E.g.*, *Smith v. Cnty. of Santa Cruz*, No. 13-cv-00595 LHK, 2014 WL 3615492,

2  at *11 (N.D. Cal. July 22, 2014); *Burns v. City of Concord*, No. C 14-00535 LB, 2014 WL

3  5794629, at *14 (N.D. Cal. Nov. 6, 2014).  Plaintiffs' attempt to bring a *Monell* claim

4  against Chief Thomas in his "Official Capacity" fares no better.  *See Shabazz v. Parris*,

5  No. CV 12-5803-SVW (JEM), 2012 WL 5388151, at *6 (C.D. Cal. Nov. 2, 2012)

6  ("Plaintiff's official capacity claims against LACSD officers and the Mayor of Lancaster

7  are tantamount to suits against Los Angeles County and the City of Lancaster").

8       ***Second***, Plaintiffs have not pleaded any facts to state a claim for *Monell* liability

9  against USC.  The Ninth Circuit has held that a private entity can be held liable under

10  section 1983 only if a "constitutional violation [was] caused by 'a policy, practice, or

11  custom of the entity,' . . . or [was] the result of an order by a policy-making officer." *Tsao*

12  *v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012).  Plaintiffs have not even

13  suggested that Chief Thomas "ordered" the constitutional violations they allege occurred.

14  Nor do they contend that USC had a formal policy that caused the violations they

15  complain of.  In the absence of such a formal policy, "[l]iability for improper custom may

16  not be predicated on isolated or sporadic incidents; it must be founded upon practices of

17  sufficient duration, frequency and consistency that the conduct has become a traditional

18  method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).  And

19  that "policy or custom" must have been "the 'moving force' behind the constitutional

20  violation." *Villegas v. Gilroy Garlic Festival Assn.*, 541 F.3d 950, 957 (9th Cir. 2008).

21  "In other words, there must be 'a direct causal link between [an entity's] policy or custom

22  and the alleged constitutional deprivation.'" *Id.*

23       Although they assert any number of legal conclusions, Plaintiffs have not pleaded

24  any *facts* to show such a policy or custom here.  (*See* SAC ¶¶ 115–23.)  At most, Plaintiffs

25  have alleged that on one prior occasion, in April 2013, "*LAPD* showed up in riot gear to a

26  peaceful, non-violent and law abiding party of African-American USC students" and

27  assert, without any basis in fact, that USC somehow "prompted" "*LAPD*'s aggressive and

28  excessive responses." (*Id.* ¶ 116 (emphases added).)  But Plaintiffs do not plead any facts

Gibson, Dunn & Crutcher LLP

11

even suggesting that any LAPD officer—let alone any DPS officer—used excessive force in April 2013.  Plaintiffs "cannot prove the existence of a . . . policy or custom based solely on the occurrence of a single incident" or two incidents in any event.  *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989); *Trevino*, 99 F.3d at 918; *Meehan v. Los Angeles County*, 856 F.2d 102 (9th Cir. 1988) (two incidents not enough to establish custom).  And *LAPD officers'* conduct on that single prior occasion—allegedly showing up in riot gear—obviously cannot support *Monell* liability against *USC.  E.g.*, *Burns*, 2014 WL 5794629, at *16 ("allegations that the Contra Costa County District Attorney's Office and the City of Antioch failed to train *their own investigators and officers* because of the *Concord Police Officers'* . . . propensity to use excessive force, do not support a claim against the Contra Costa County District Attorney's Office and the City of Antioch").

Unable to show an actual policy or custom, Plaintiffs baldly assert that USC and Chief Thomas were "deliberate[ly] indifferen[t]" to Plaintiffs' rights.  (SAC ¶ 119.)  But Plaintiffs do not plead any facts sufficient to meet that "stringent standard of fault." *Board of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997).  Instead, they assert vaguely and only "[u]pon information and belief" that "in the years and months prior to May 4, 2013, Defendant Chief Thomas received numerous complaints of excessive force and unreasonable police interference from the black student community at the hands of USC DPS officers."  (SAC ¶ 122.)  What Plaintiffs do not and cannot plead is *facts* showing the kind of "pattern of similar constitutional violations by untrained employees [that] is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."  *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011).

### 4.    Plaintiffs' Equal-Protection Cause of Action Should Be Dismissed

Plaintiffs likewise fail to plead facts to state a claim for relief on their fifth cause of action for racial discrimination and deprivation of equal protection, which they now assert against DPS Does 2–10 and Chief Thomas.  "To prevail on an Equal Protection claim brought under § 1983, Plaintiffs must allege facts plausibly showing that 'the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a

protected class.'" *Hartmann v. Cal. Dep't of Corrections & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013).  Plaintiffs once again have failed to allege any such thing here.

*First*, Plaintiffs fail to plead any facts to show that any individual DPS Doe actually engaged in discriminatory conduct on the night at issue.  Rather, now as before, Plaintiffs implausibly and without any factual support assert that "USC DPS organized or otherwise exaggerated the need for excessive police response . . . with the knowledge that they were responding to a predominantly African American student party"; that "USC DPS Doe Defendants purposefully targeted Plaintiffs as African Americans and minorities for arrest and police interference"; that "LAPD Individual Defendants and USC DPS Doe Defendants 2–10 . . . intentionally chose the African-American and minority students . . . as the targets of the forceful and illegal arrests and seizures, unreasonable uses of force and intimidation, abuses and falsifications of reports"; and that "[s]aid Defendants' decision to so act was, on its face, discriminatory on the basis of race" and "motivated by a desire to inflict punishment for a perceived slight or some other baseless, imaginings of Defendants."  (SAC ¶¶ 152–53, 172–74.)  But these "naked assertion[s]" of bias "devoid of 'further factual enhancement'" do not "suffice" to support Plaintiffs' equal-protection cause of action—especially against private security officers.  *Iqbal*, 556 U.S. at 678.  And as USC has explained, group or "team effort" allegations are insufficient as a matter of law to show liability under section 1983.  *Jones*, 297 F.3d at 935.

*Second*, Plaintiffs have not pleaded any facts to show that Chief Thomas can be liable under section 1983.  "A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  But "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights," *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), and Plaintiffs have not pleaded—and cannot plead—any such facts here.  Plaintiffs cannot assert that Chief Thomas was even present on the night in question, much less that

1   he was personally involved in the supposed misconduct.  And rather than even attempt to

2   allege facts showing that Chief Thomas somehow "caused" the conduct they complain

3   about, Plaintiffs instead copied-and-pasted the same threadbare legal conclusions they

4   asserted in support of their invalid *Monell* cause of action against Chief Thomas.

5   (*Compare* SAC ¶¶ 165–67 *with id.* ¶¶ 121–23.)  That is not enough.

6        In any event, the gravamen of Plaintiffs' claim is that racial animus motivated the

7   excessive force *LAPD officers* allegedly used—not that Chief Thomas or any individual

8   DPS Doe actually acted with a discriminatory purpose.  And neither Chief Thomas nor

9   any DPS Doe can defend himself against Plaintiffs' scurrilous allegations of racial

10  discrimination where Plaintiffs fail to plead any facts showing what actions or inactions

11  supposedly constituted that discrimination.  *See Jones*, 297 F.3d at 935.

**B.**    **Plaintiffs' Cause of Action for Intentional Infliction of Emotional Distress**

       **Should Be Dismissed**

14        Plaintiffs' claim for intentional infliction of emotional distress ("IIED") also should

15  be dismissed.[3]  "A cause of action for intentional infliction of emotional distress exists

16  when there is (1) extreme and outrageous conduct by the defendant with the intention of

17  causing, or reckless disregard of the probability of causing, emotional distress; (2) the

18  plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate

19  causation of the emotional distress by the defendant's outrageous conduct."  *Hughes v.*

20  *Pair*, 46 Cal. 4th 1035, 1050 (2009) (internal quotation marks omitted).  "A defendant's

21  conduct is outrageous when it is so extreme as to exceed all bounds of that usually

22  tolerated in a civilized community . . . [and is] intended to inflict injury or engaged in with

23  the realization that injury will result."  *Id.* at 1050–51 (internal quotation marks omitted).

**1.**    **Plaintiffs Do Not Allege Any Extreme and Outrageous Conduct by DPS**

25        Now as before, Plaintiffs cannot satisfy even the first element of their IIED cause of

---

[3]  While Plaintiffs' IIED claim is now asserted only against the DPS Does (and not USC), it is substantively identical to the IIED claim in the FAC (*compare* SAC ¶¶ 178–85 *with* FAC ¶¶ 168–75).  The few new facts Plaintiffs allege in the SAC have no bearing on the IIED claim.

1   action.  Although they baldly assert that LAPD Defendants and DPS Does engaged in

2   "outrageous" conduct by "unlawfully and unjustifiably assaulting, intimidating, berating

3   and humiliating Plaintiffs for no justifiable reason or cause and the use of unlawful and

4   excessive force on Plaintiffs knowing that Plaintiffs had done nothing wrong nor illegal in

5   their presence, and thereafter, to punish them for deigning to refuse to be subjected to

6   wrongful and illegal behavior, to proceed to issue false arrest reports, with no probable

7   cause to believe Plaintiffs had committed any crime" (SAC ¶ 179), Plaintiffs do not

8   identify what particular conduct by a DPS Doe was outrageous or extreme.  Moreover, the

9   USC Defendants are aware of no authority that would support Plaintiffs' novel assertion

10  that each defendant's conduct was outrageous solely because each defendant used

11  "authority conferred on him by law as a Peace Officer" to "affect [sic]" the generic

12  "injustices" Plaintiffs claim to have suffered.  (SAC ¶ 180.)

13          **2.      Plaintiffs Do Not Adequately Allege Causation**

14          Plaintiffs' IIED causation also fails as a matter of law because where Plaintiffs

15  cannot identify what conduct by any individual DPS Doe was "outrageous," they cannot

16  show causation between that conduct and the emotional distress they claim to have

17  suffered.  Plaintiffs' naked assertion that "Defendants' conduct was a substantial factor in

18  causing" them to suffer from emotional distress is not enough (SAC ¶ 184), as "[a]

19  pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

20  cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

21  **C.     Plaintiffs' Cause of Action for Assault Should Be Dismissed**

22          **1.      Plaintiffs Do Not Allege That a DPS Doe Threatened to Touch Anyone**

23          Plaintiffs once again fail to allege several of the elements required to state a claim

24  for assault.[4]  "Under California law, to prevail on the tort of assault, the plaintiff must

25  establish that: (1) the defendant threatened to touch the plaintiff in a harmful or offensive

26  

27  ――――――――――――――――――

28  [4]  Plaintiffs' assault claim is substantively identical to the assault claim in the FAC
    (*compare* SAC ¶¶ 193–204 *with* FAC ¶¶ 183–94), and the few other different factual
    allegations in the SAC have no bearing on the assault claim.

manner; (2) it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the defendant's conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the plaintiff's harm." *Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012).

Plaintiffs have (again) failed to allege either of the first two elements.  Plaintiffs do not allege that any DPS Doe actually threatened to touch a Plaintiff, or that any Plaintiff actually feared a touching by any DPS Doe, or even that it reasonably appeared to any Plaintiff that a DPS Doe threatened to touch him or her.  Instead, Plaintiffs allege that "*[a] reasonable person in Plaintiffs' position* would have feared an imminent battery, arrest, or otherwise offensive touching at the hands of [unidentified] Defendants *if they . . . refuse[d] to comply* with [the unidentified] Defendants' unreasonable demands."  (SAC ¶ 201) (emphases added).  But Plaintiffs make clear that they *complied* with all directions given by LAPD and DPS, and no actual threat of touching or reasonable appearance of imminent touching *by any DPS Doe* could be inferred from Plaintiffs' generic allegation.

### 2. Plaintiffs Do Not Allege Any Theory by Which a DPS Doe Could Be Held Liable for Assault

Plaintiffs' assault claim also fails to the extent that they attempt to predicate liability on their allegations that DPS Does requested LAPD's presence (what Plaintiffs call a "showing of force") or participated in a skirmish line.

*First*, Plaintiffs do not allege that the "showing of force" or the skirmish line actually constituted a threat of a harmful touching, or that it reasonably appeared to any Plaintiff that he or she would be touched as a result of either one.

*Second*, DPS Does cannot be held liable under an aiding-and-abetting theory based on the "showing of force" or presence on the skirmish line—the tack Plaintiffs have taken in opposing USC's previous motions.  Plaintiffs do not allege that they feared an imminent touching by any person at any point, let alone as a result of the skirmish line or the alleged "showing of force."  And California law is clear that a defendant aids and abets an assault only where the defendant "aid[s], abet[s], counsel[s] or encourage[s]"

Gibson, Dunn & Crutcher LLP

anyone to commit an assault or battery against the plaintiff.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 926 (9th Cir. 2001).

Unlike in cases where a defendant directed the specific tortious action, such as ordering an assailant to recover a whip and strike a plaintiff (*Turner v. Whittel*, 2 Cal. App. 2d 585 (1934)), or urging and encouraging the defendant's son to "attack" a plaintiff (*Ayer v. Robinson*, 163 Cal. App. 2d 424 (1958)), Plaintiffs' allegations here are similar to those that the Ninth Circuit encountered in *Arpin*.  There, the court concluded that while a bus driver's "call and subsequent report [to sheriff's deputies] may have brought about the officers' interaction with [the plaintiff]," and even though the bus driver apparently was present while the officers allegedly "use[d] excessive force when arresting" the plaintiff, the driver could not be liable for assault or battery.  *Arpin*, 261 F.3d at 918, 926.

Similarly, the most that Plaintiffs have alleged here is that USC's communications with LAPD and DPS Does' presence in the skirmish line may have brought about the LAPD officers' interaction with Plaintiffs, and that some unnamed DPS Does were in the general vicinity when certain LAPD officers allegedly used excessive force when arresting Plaintiffs.  But they do not allege that any specific DPS Doe actually "counseled or encouraged" any particular assault against any Plaintiff, or even was part of any arrest decision.  Indeed, Plaintiffs *omitted* from the SAC their previous (implausible) assertions that USC used the time between receipt of the noise complaint and the eventual police response to organize a use of force by LAPD.  (*See* FAC ¶ 20, 74.)

**D.      Plaintiffs' Claim for Violation of the Unruh Act Should Be Dismissed**

In order to bring a claim for a violation of the Unruh Act based on racial discrimination, Plaintiffs must show:  (1) that USC denied, aided, or incited a denial of, or discriminated or made a distinction that denied, full and equal accommodations or advantages or facilities or privileges or services to Plaintiffs; (2) that a motivating reason for USC's conduct was its perception of their race, or that their race was associated with a motivating factor for USC's conduct; (3) that they were harmed; and (4) that USC's conduct was a substantial factor in causing their harm.  Judicial Council of Cal., Civil Jury

Instructions No. 3060 (2012).  As before, Plaintiffs have made no such showing.

### 1.    Plaintiffs Do Not Allege Willful and Affirmative Misconduct

"[I]n order to state an independent violation of the Unruh Act, plaintiffs must plead 'intentional discrimination in public accommodations.'"  (Doc. 30 at 10 (quoting *Greater Los Angeles Agency on Deafness, Inc. v. CNN, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014)).) The Unruh Act's intentional discrimination element requires a showing of "willful, affirmative misconduct on the part of those who violate the Act."  *Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824, 853 (2005).  And "a plaintiff must plead more than the disparate impact of a facially neutral policy."  (Doc. 30 at 10.)

This Court properly dismissed the Unruh Act claim in Plaintiffs' original Complaint because it "contain[ed] no factual allegations of any willful, affirmative misconduct by USC," and because Plaintiffs had merely alleged the "bare assertions that unspecific 'agents' of USC set in motion a policy that caused LAPD officers to specifically target minority students."  (Doc. 30 at 11.)  The same is true of the SAC, which contains no factual allegations of any willful, affirmative misconduct by USC.  Rather, Plaintiffs rely on their bare assertions that, "upon information and belief," USC had a "desire to specifically target African-American and minority students" (SAC ¶ 210), and that DPS Does "targeted Plaintiffs as minority and African American students for unnecessary police interference and arrest, despite full knowledge that similarly situated Caucasian students resided across the street, in violation of the same presumptive violations Plaintiffs were purportedly in violation of (noise complaint)" (*id*. ¶ 212).

Plaintiffs' "allegations of a 'pattern and practice of discriminating against African-American and minority students' refer to another incident in which LAPD officers disbanded minority students [without the use of force], one other prior incident in which LAPD officers treated a primarily Caucasian party differently, and one comment from an LAPD officer taken from an unauthenticated video in which the LAPD officer purportedly said that 'When USC calls us, this is how we show up.'"  (Doc. 30 at 10 (quoting Compl. at 16–17, 36).)  Plaintiffs have not alleged any additional facts that would show a pattern

or practice of discrimination, much less any factual allegations of willful, affirmative misconduct or intentional discrimination by USC.  Here, as in *Iqbal*, the "conclusory nature" of Plaintiffs' allegations "disentitles them to the presumption of truth."  556 U.S. at 680–81.  Just as with the original Complaint, the SAC's "factual allegations, at best, are merely consistent with a policy that LAPD intentionally targeted parties frequented by African American and minority students."  (Doc. 30 at 11.)  And "plaintiffs' factual allegations [still] do not permit the Court to infer more than the mere possibility of misconduct" such that the SAC "fails to show that plaintiffs are entitled to relief on their Unruh Act claim."  (*Id.* (citing *Iqbal*, 556 U.S. at 679)).

## 2. Plaintiffs Do Not Allege That They Were Denied Applicable Benefits

The events Plaintiffs describe are not of the type for which the Unruh Act is intended to provide a cause of action.  The Unruh Act protects all persons from "arbitrary discrimination" in "accommodations, advantages, facilities, privileges or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51.

Although Plaintiffs summarily allege that "policing services" are a "service" or "accommodation" under the Unruh Act (SAC ¶ 207), they do not allege that they were denied any such services on account of race.  They do not allege, for example, that they received too few "protective [police] resources for racial reasons."  *Gates v. Superior Court*, 32 Cal. App. 4th 481, 494 (1995).  Nor do they allege that their race was a motivating factor in a failure by police to respond to a 911 call they placed.  Protection from "police scrutiny" is not an accommodation or benefit that the Unruh Act protects.

## 3. Plaintiffs Do Not Adequately Allege Causation

Plaintiffs fail to state an Unruh Act claim for the additional reason that they have again failed to adequately plead causation.  Plaintiffs assert that (1) DPS's supposed longstanding practice of "police scrutiny" of minority students "was a substantial factor" in (2) the response of LAPD and DPS to a noise complaint, which (3) was "a direct and proximate" cause of (4) harm suffered by Plaintiffs by their unlawful arrests.  (SAC ¶¶ 214, 216–17.)  That attenuated theory is plainly insufficient to show that USC's

conduct was a "substantial factor" in causing them harm.  Judicial Council of Cal., Civil Jury Instructions No. 3060 (2012).  "A substantial factor in causing harm . . . must be more than a remote or trivial factor." *Id.*, No. 430 (2012).  Here, DPS's alleged practice at most could have played only a "remote" part in causing LAPD officers' alleged misconduct.  It is simply too speculative to allege that a ***DPS*** policy or practice could have caused the actions of individual ***LAPD officers*** alleged in the SAC.

Plaintiffs have failed to plead any detailed facts about causation in any event.  Instead, they have pleaded only conclusions that DPS's alleged practice "was a substantial factor" in causing the complained of response by law enforcement.  (FAC ¶ 216.)  Plaintiffs' bare restatement of the element of causation, without any explanation for how the alleged practice actually caused the law enforcement actions that supposedly caused harm, is insufficient as a matter of law.  *Iqbal*, 556 U.S. at 678.

## E.   Plaintiffs' Cause of Action for False Promise Should Be Dismissed

An "action based on a false promise is simply a type of *intentional* misrepresentation, i.e., actual fraud." *Doe v. Gangland Prods.*, 730 F.3d 946, 960 (9th Cir. 2013).  Thus, Rule 9(b)'s heightened pleading requirement applies to claims for false promise. *First Advantage Background Servs. Corp. v. Private Eyes*, *Inc*., 569 F. Supp. 2d 929, 938–39 (N.D. Cal. 2008).  The same elements—(1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage—apply to both intentional fraud and false promise. *Id*.  Plaintiffs fail to adequately allege several of these required elements, as the few factual allegations added to the SAC do not rectify the pleading defects identified by USC's Motion to Dismiss the FAC.[5]

### 1.   Plaintiffs Have Not Alleged Any Actionable False Statement

By Plaintiffs' own admission, the statement on which Plaintiffs' false-promise claim is predicated was not false.  Plaintiffs assert that USC Student Affairs Vice

---

[5]  Plaintiffs' allegations regarding benefits received by Asian students on a prior, unrelated occasion have no bearing on Plaintiffs' claims for false promise, which obviously is not based on discrimination.

Gibson, Dunn & Crutcher LLP

President Michael Jackson stated at a May 7, 2013 Town Hall meeting that "USC was going to provide academic accommodations to Plaintiffs." (SAC ¶¶ 255, 263.) And Plaintiffs admit that "accommodations . . . were . . . provided by Defendant USC," and that in the two days immediately following the Town Hall meeting, USC *did* act as an intermediary between two of the Plaintiffs and their professors. (*Id.* ¶¶ 238, 224-25, 228-230.) That should be the end of the inquiry.

But in any event, the alleged false statement is not a specific and measureable promise that can give rise to a misrepresentation claim, as Plaintiffs do not allege that Dr. Jackson specified particular academic accommodations that USC would provide. A statement must make a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999).

Plaintiffs allege that Dr. Jackson remarked that "it was indeed unacceptable for the arrested students to have to hunt down their professors to seek academic accommodations or to arrange their own psychological counseling." (SAC ¶ 221.) This is not a promise that USC would do anything, but Plaintiffs apparently construe Dr. Jackson's statement as promising that: (1) "USC would provide academic accommodations to Plaintiffs"; (2) "USC would act as the intermediary between Plaintiffs and their teachers"; and (3) "USC would provide psychological counseling to Plaintiffs." (*Id.* ¶ 222.) Plaintiffs' unreasonable interpretation of a statement that on its face is *not* a promise or representation of future acts cannot serve as an actionable false statement. Even "[a]n 'implied' assertion or representation is not enough" to support misrepresentation claims. *Wilson v. Century 21 Great W. Realty*, 15 Cal. App. 4th 298, 306 (1993). Instead, "a positive assertion" is required, as the "[p]arties cannot read something into a neutral statement in order to justify a claim for negligent misrepresentation." *Diediker v. Peelle Fin. Corp.*, 60 Cal. App. 4th 288, 297–98 (1997).

**2.      Plaintiffs Have Not Adequately Alleged That Dr. Jackson Knew His Statement Was False or That He Intended to Induce Reliance**

Plaintiffs' conclusory allegations of knowledge of falsity and intent to induce reliance do not meet Rule 8's plausibility standard.  This Court concluded that the original "Complaint fail[ed] to set forth with particularity any allegations regarding . . . USC's knowledge of falsity."  (Doc. 30 at 12.)  Yet the SAC repeats the same two insufficient generic allegations of knowledge of falsity that were in the original Complaint (Compl. ¶¶ 180, 188; FAC ¶¶ 252, 260; SAC ¶¶ 258, 266), and also includes a laundry list of similar conclusory allegations of knowledge of falsity (SAC ¶¶ 223, 234, 235, and 247).

The original Complaint also "fail[ed] to allege any factual basis for their assertion that USC intended to induce plaintiffs' reliance on the misrepresentation[.]"  (Doc. 30 at 13.)  In the SAC, Plaintiffs summarily allege that Dr. Jackson made the statement "to place Defendant USC in a better light[,]" "to induce Plaintiffs into silencing their cries for justice[,]" and "with the purposeful intent to induce such reliance and satisfy the criticisms of the public, in order to minimize the negative press Defendant USC was receiving at the time."  (SAC ¶¶ 223, 235, 239.)  Plaintiffs offer no factual bases for these claims.

If (as Plaintiffs claim) USC's goal was to keep Plaintiffs from airing their complaints publicly (FAC ¶¶ 223, 235, 239), then USC presumably would have provided the academic accommodations Plaintiffs supposedly desired.  Plaintiffs cannot offer any reason why USC would not intend to follow through on whatever promises it made.  Thus, their conclusory allegations of knowledge of falsity and intent to induce reliance are not entitled to a presumption of truth because they are simply implausible.

**3.      Plaintiffs Have Not Pleaded Actual or Reasonable Reliance**

Plaintiffs also have not adequately pleaded that they *actually* relied on USC's alleged representations.  Because Plaintiffs must plead their misrepresentation claims with particularity, "the mere assertion of 'reliance' is insufficient.  The plaintiff must allege the specifics of his or her reliance on the misrepresentation to show a bona fide claim of actual reliance."  *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004).

This Court correctly concluded that Plaintiffs had "fail[ed in their Complaint] to allege any factual basis for their assertion that . . . in the absence of Dr. Jackson's statement, . . . any plaintiff would not have acted as he or she did in reliance upon the representation." (Doc. 30 at 13.)  The SAC does nothing to rectify that defect.  Instead, it merely alleges that Plaintiffs' "reliance on Dr. Jackson's promises delayed their personal efforts to make arrangements for their own final examinations, and caused them to withhold or withdraw their efforts at achieving justice through the court of public opinion" (SAC ¶ 246), and that "Plaintiffs . . . waited for Defendant USC to honor the promise" (*id.* ¶ 249).  Those conclusory statements are insufficient to state a claim.  Plaintiffs have failed to plead any facts showing that "in the absence of Dr. Jackson's statement, . . . any plaintiff would not have acted as he or she did in reliance upon the representation." (Doc. 30 at 13.)  Absent such factual allegations, Plaintiffs' mere incantation of the word "reliance" falls far short of Rule 9(b)'s heightened pleading requirement.

Furthermore, the few facts alleged in the SAC contradict Plaintiffs' generic assertions that they relied on Dr. Jackson's supposed promise.  For example, on May 8, 2013, the day after the Town Hall meeting, a USC representative emailed Ms. Wang and one of her professors to put them in direct contact for discussing an accommodation. (SAC ¶¶ 225, 230.)  On May 9, "Plaintiff Wang was still studying for a final examination scheduled that day." (*Id.* ¶ 226.)  That same day, a professor told Mr. Sneed that no accommodation would be given to him. (*Id.* ¶ 227.)  Ms. Wang and Mr. Sneed clearly did not "delay[] their personal efforts" in reliance on Dr. Jackson's statement, as Plaintiffs allege; rather, this correspondence shows the opposite was true.  And the SAC contains no specific allegations regarding any reliance by any of the other five Plaintiffs.

### 4.    Plaintiffs Have Not Pleaded Causation

Plaintiffs' theory of causation likewise fails as a matter of law.  To state a fraud claim "[u]nder California law, a complete causal relationship between the fraud or deceit and the plaintiff's damages is required.  An essential element in recovery for deceit is proof of the plaintiff's justifiable reliance on the defendant's fraudulent representations.

Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have [taken the action]." *City Solutions, Inc. v. Clear Channel Commc'ns, Inc.*, 365 F.3d 835, 840 (9th Cir. 2004) (internal citations and punctuation omitted). "[S]pecific pleading is necessary to 'establish a complete causal relationship[.]'" *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1092 (1993) (internal citations omitted).

Plaintiffs do not allege that the reliance that USC allegedly intended to induce actually caused their harm. Plaintiffs contend that USC hoped that promising academic accommodations would cause them "to withhold or withdraw their efforts at achieving justice through the court of public opinion," "calm the audience" at the Town Hall meeting, and "minimize the negative press Defendant USC was receiving at the time." (SAC ¶¶ 246, 223, 239.) However, Plaintiffs do not allege that they ever actually "silenced their cries for justice" or were harmed by doing so. And they do *not* allege that USC induced them to delay seeking academic accommodations.

Even if Plaintiffs adequately alleged reliance on USC's "promises," they fail to allege that such reliance completely caused their damages. Plaintiffs again summarily allege that "[a]s a direct and proximate result of Defendant USC's intentional misrepresentations, Plaintiffs have suffered additional exacerbation of the effects of the arrests, have been prevented from having any certainty or finality to their academic affairs, and suffered an inability to perform to their fullest potential as students during their academic finals, therefore hindering their future potential resulting in loss of earning capacity and emotional injuries all to their damages [*sic*]," and assert that the alleged "delay has further compounded Plaintiffs' trauma, and psychological damages." (SAC ¶¶ 260, 251.) But Plaintiffs plead no facts showing a complete causal relationship between Dr. Jackson's supposed statement and the actual damages they complain about—loss of earning capacity and emotional injuries. *See Zumbrun v. Univ. of S. Cal.*, 25 Cal. App. 3d 1, 8 (1972) (causal connection was lacking as a matter of law where plaintiff

student failed to plead any facts showing how a professor's failure to finish teaching a course in which she received a grade led to damages, including loss of future income).

### 5.    Plaintiffs Have Not Adequately Pleaded Damages

Plaintiffs vague and unsupported allusions to harm are not pled with the particularity required to state a claim.  They allege only that USC's supposed misrepresentation caused Plaintiffs to "have suffered additional exacerbation of the effects of their arrests," prevented Plaintiffs "from having any certainty or finality in their academic affairs," caused Plaintiffs to suffer "an inability to perform to their fullest potential as students during their academic finals," and hindered Plaintiffs' "future potential resulting in loss of earning capacity and emotional injuries."  (SAC ¶ 260.)

## F.    Plaintiffs' Claim for Negligent Misrepresentation Should Be Dismissed

Finally, Plaintiffs assert a claim for negligent representation on the grounds that Dr. Jackson "made the affirmative assurance of material and important fact that Defendant USC was going to provide academic accommodations to Plaintiffs."  (SAC ¶¶ 263, 268.) Although a false promise to perform in the future can be the basis of an *intentional* misrepresentation claim, because "an action for negligent misrepresentation cannot be founded upon a false promise," *Dielsi v. Falk*, 916 F. Supp. 985, 995 n.13 (C.D. Cal. 1996), California law forbids Plaintiffs' negligent misrepresentation claim based on their assertion that Dr. Jackson made a false promise about future actions to be taken by USC.

## V.    CONCLUSION

For the foregoing reasons, each of Plaintiffs' causes of action against the USC Defendants should be dismissed with prejudice.

Dated: January 23, 2015

GIBSON, DUNN & CRUTCHER LLP


By:  /s/ Debra Wong Yang
Debra Wong Yang

Attorneys for Defendant UNIVERSITY OF SOUTHERN CALIFORNIA