DEBRA WONG YANG, SBN 123289
  dwongyang@gibsondunn.com
MATTHEW A. HOFFMAN, SBN 227351
  mhoffman@gibsondunn.com
ROSS HALPER, SBN 253488
  rhalper@gibsondunn.com
ANDREW G. PAPPAS, SBN 266409
  apappas@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Attorneys for Defendants
UNIVERSITY OF SOUTHERN CALIFORNIA
& CHIEF JOHN THOMAS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYVEN VINSON, an Individual; CHRISTIAN SUTTON, an Individual; OLAOLUWA BAYODE, an Individual; DEBBIE RUMBO, an Individual; FRANCES WANG, an Individual; JASON SNEED, an Individual; and TEREMY JACKSON, an Individual,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, a Public Entity; UNIVERSITY OF SOUTHERN CALIFORNIA, a Private Corporate Entity; CHIEF JOHN THOMAS, in his individual and official capacity as Chief of USC Department of Public Safety; LAPD OFFICER CARLYLE; LAPD OFFICER ROSE; LAPD OFFICER MORAN; LAPD OFFICER ROCKETT; LAPD OFFICER PEAKE; LAPD OFFICER CHIU; LAPD OFFICER WOLFCHIEF; LAPD OFFICER AYALA; LAPD OFFICER CORDOBA; LAPD SERGEANT WASHINGTON; LAPD OFFICER BARRIENTOS; LAPD OFFICER MARX; and DOES 1-10, Inclusive,<br><br>Defendants. | CASE NO. 14-4488-PLA<br><br>**DEFENDANTS UNIVERSITY OF SOUTHERN CALIFORNIA AND CHIEF JOHN THOMAS'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>[Fed R. Civ. P. 12(b)(6) & 9(b)]<br><br>**Hearing:**<br>Date:    March 24, 2015<br>Time:   10:00 a.m.<br>Place:   Courtroom G, 9th Floor<br>Judge:  Hon. Paul L. Abrams, U.S. Magistrate Judge |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT..........................................................................................................2

    A. Each of Plaintiffs' Causes of Actions Under Section 1983 Should Be Dismissed With Prejudice....................................................................2

        1. Plaintiffs' Excessive Force Cause of Action Should Be Dismissed. ..................................................................................2

        2. Plaintiffs' Failure to Intervene Cause of Action Should Be Dismissed. ..................................................................................5

        3. Plaintiffs' *Monell* Claim Against USC Should Be Dismissed. ........7

        4. Plaintiffs' Equal Protection Cause of Action Should Be Dismissed. ..................................................................................9

    B. Plaintiffs' Unruh Act Cause of Action Should Be Dismissed. ................11

        1. Plaintiffs Do Not Allege Willful and Affirmative Misconduct. ...............................................................................11

        2. Plaintiffs Do Not Allege They Were Denied Applicable Benefits. ....................................................................................12

        3. Plaintiffs Cannot Show Causation. ..............................................13

III. CONCLUSION ...................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Kraft*,
   No. 5:10-CV-00602-LHK, 2011 WL 3240598 (N.D. Cal. July 29,
   2011) .................................................................................................................. 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................... 9, 12

*Blankenhorn v. City of Orange*,
   485 F.3d 463 (9th Cir. 2007) ......................................................................... 3, 5

*Board of Comm'rs of Bryan Cnty. v. Brown*,
   520 U.S. 397 (1997) .......................................................................................... 8

*Boyd v. Benton County*,
   374 F.3d 773 (9th Cir. 2004) ............................................................................ 4

*Bravo v. City of Santa Maria*,
   665 F.3d 1076 (9th Cir. 2011) .......................................................................... 3

*Brown v. City & Cnty. of San Francisco*,
   No. C 11-02162 LB, 2014 U.S. Dist. LEXIS 48386 (N.D. Cal. Apr.
   7, 2014) ............................................................................................................. 3

*Burns v. City of Concord*,
   No. C 14-00535 LB, 2014 WL 5794629 (N.D. Cal. Nov. 6, 2014) .................. 8

*Chuman v. Wright*,
   76 F.3d 292 (9th Cir. 1996) ............................................................... 2, 3, 5, 10

*Connick v. Thompson*,
   131 S. Ct. 1350 (2011) ...................................................................................... 9

*Cunningham v. Gates*,
   229 F.3d 1271 (9th Cir. 2000) .......................................................................... 5

*Felarca v. Birgeneau*,
   Case No. 11-CV-5719 YGR, 2014 WL 206762 (N.D. Cal. Jan. 17,
   2014) ................................................................................................................. 4

*Gates v. Superior Court*,
   32 Cal. App. 4th 481 (1995) ........................................................................... 13

*Greater Los Angeles Agency on Deafness, Inc. v. CNN, Inc.*,
   742 F.3d 414 (9th Cir. 2014) .......................................................................... 11

*Hansen v. Black*,
   885 F.2d 642 (9th Cir. 1989) .......................................................................... 10

*Ivey v. Bd. of Regents of the Univ. of Alaska*,
   673 F.2d 266 (9th Cir. 1982) .......................................................................... 10

*James ex rel. James v. Sadler*,
   909 F.2d 834 (5th Cir. 1990) ............................................................................ 5

# TABLE OF AUTHORITIES *(continued)*

Page(s)

*Jones v. Williams*,
  297 F.3d 930 (9th Cir. 2002) .................................................................. 2, 3, 5, 10, 11

*Koebke v. Bernardo Heights Country Club*,
  36 Cal. 4th 824 (2005) ........................................................................................ 11

*Leer v. Murphy*,
  844 F.2d 628 (9th Cir. 1988) ................................................................................. 2

*Melear v. Spears*,
  862 F.2d 1177 (5th Cir. 1989) ............................................................................... 4

*Monell v. Department of Social Services*,
  436 U.S. 658 (1978) ......................................................................................... 2, 7

*Nelson v. City of Los Angeles*,
  No. CV 11-5407-PSG (JPR), 2014 WL 6066053 (C.D. Cal. Nov. 13, 2014) ............................................................................................................. 6

*Ramirez v. Butte-Silver Bow Cnty.*,
  298 F.3d 1022 (9th Cir. 2002) ............................................................................... 6

*Trevino v. Gates*,
  99 F.3d 911 (9th Cir. 1996) ................................................................................... 7

*Tsao v. Desert Palace, Inc.*,
  698 F.3d 1128 (9th Cir. 2012) ............................................................................... 7

*Villegas v. Gilroy Garlic Festival Assn.*,
  541 F.3d 950 (9th Cir. 2008) ................................................................................. 7

**Statutes**

42 U.S.C. § 1983 ............................................................................................. *passim*

**Other Authorities**

Judicial Council of Cal., Civil Jury Instructions No. 3060 (2012) .............................. 13

# REPLY MEMORANDUM

## I. INTRODUCTION

Plaintiffs' Opposition to the USC Defendants'[1] Motion to Dismiss the Second Amended Complaint ("Motion") only confirms that each of Plaintiffs' claims against the USC Defendants should be dismissed with prejudice. Plaintiffs "concede outright" that their *Monell* claim against Chief Thomas "should be dismissed." Doc. 56 at 12 n.2. They "submit on previously presented briefing and oral argument as to their" causes of action for intentional infliction of emotional distress, assault, false promise, and negligent misrepresentation (*id.* at 1), tacitly admitting that they still cannot plead facts in support of any of those state law claims, all of which fail for the reasons set forth in USC's Motion.

Plaintiffs' remaining claims fare no better. Their civil rights claims under 42 U.S.C. section 1983 should be dismissed because they have not pleaded and cannot plead facts showing (1) that any individual DPS Doe used excessive force or was an integral participant in anyone else's use of excessive force; (2) that any individual DPS Doe had a duty (let alone a realistic opportunity) to intervene to prevent any constitutional violation from occurring but failed to do so; (3) that USC is liable under *Monell*; or (4) that USC or Chief Thomas somehow denied any Plaintiff the equal protection of the laws. Likewise, Plaintiffs have not pleaded and cannot plead sufficient facts to support their cause of action for violation of the Unruh Act.

The Second Amended Complaint ("SAC") was Plaintiffs' "**one final opportunity** to present a complaint that includes **all** the facts they want the Court to consider in determining the sufficiency of the allegations. Doc. 46 at 1 (emphasis in original). Because the SAC still fails to state facts sufficient to state a single cause of action against any USC Defendant, it should be dismissed with prejudice.

---

[1] Here, as in the Motion, defendants the University of Southern California, USC Department of Public Safety Chief John Thomas, and the unnamed USC DPS Doe Defendants are collectively referred to as the "USC Defendants."

## II.     ARGUMENT

### A.     Each of Plaintiffs' Causes of Actions Under Section 1983 Should Be Dismissed With Prejudice.

Plaintiffs' Opposition confirms that each of their four causes of action under section 1983—based on (1) an unreasonable and excessive use of force, (2) failure to intervene, (3) *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and (4) deprivation of equal protection—should be dismissed with prejudice.

As this Court has explained, "in order to state a claim against a *particular* defendant for violation of his or her civil rights under 42 U.S.C. § 1983, each plaintiff must allege that a *specific* defendant, while acting under color of state law, deprived him or her of a right guaranteed under the Constitution or a federal statute." Doc. 30 at 8 (emphases added). Thus, "[t]he inquiry into causation must be individualized and focus on the duties and responsibilities of *each individual defendant* whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (emphasis added). A defendant cannot be held "liable because of his membership in a group without a showing of *individual participation* in the unlawful conduct." *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (citing *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996) (emphasis added)).

Here, Plaintiffs' section 1983 claims should again be dismissed because even if USC, Chief Thomas, or DPS Does were acting under color of state law—which USC does not concede and Plaintiffs have not pleaded facts adequate to show—Plaintiffs have not pleaded any facts even suggesting that any individual DPS Doe took or failed to take any action so as to deprive any Plaintiff of any constitutional or statutory right.

#### 1.     Plaintiffs' Excessive Force Cause of Action Should Be Dismissed.

As USC's Motion explains, Plaintiffs do not allege facts to suggest that any *individual* DPS Doe used excessive force or was an "integral participa[nt]" in any constitutional violations that may have occurred. *Jones*, 297 F.3d at 935.

Plaintiffs do not meaningfully contend otherwise. Instead, despite this Court's

1   clear instruction that, to state a claim under section 1983, "each plaintiff must allege
2   that a specific defendant . . . deprived him or her of a right guaranteed under the
3   Constitution or a federal statute" (Doc. 30 at 8), and despite the Ninth Circuit's
4   repeated rejection of a "team effort" approach to liability (*Jones*, 297 F.3d at 935; *see*
5   *Chuman*, 76 F.3d at 294), Plaintiffs once again assert in their Opposition that the entire
6   *group* of DPS Does made an excessive *showing* of force (as opposed to *using*
7   excessive force) and "were integral participants in the eventual arrests by of Plaintiffs
8   by the LAPD Defendants" (Doc. 56 at 7).  For example, Plaintiffs generally assert that
9   "*DPS Does* were intertwined with LAPD officers, standing shoulder to shoulder in the
10  skirmish line, blocking Plaintiffs' way of egress"; that "*[t]hey* were present throughout
11  the entire incident aiding in the escalation of hostilities toward Plaintiffs"; that, "by
12  virtue of the memorandum of understanding, USC *DPS Does* were involved from the
13  beginning of the incident and . . . were responsible for prompting the excessive
14  *showing* of force in the first place"; that "*DPS Does* opted to participate in a joint
15  effort with the LAPD to instill fear into Plaintiffs, and the crowd"; and that "*DPS Does*
16  not only frightened and confused Plaintiffs; *they* actively assisted in forcing them into
17  their unlawful arrests."  Doc. 56 at 7–8 (emphases added).

18      But Plaintiffs do not cite even a single paragraph of the SAC in support of those
19  baseless claims.  They do not even attempt to point to facts about any "*specific*" DPS
20  Doe's conduct.  And none of the conduct Plaintiffs attribute to the *group* of DPS Does
21  comes anywhere close to constituting an excessive use of force.  *See Blankenhorn v.*
22  *City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007) (police officer "who at most
23  provided crowd control, did not participate in any integral way in the arrest" and could
24  not be held liable under section 1983); *Bravo v. City of Santa Maria*, 665 F.3d 1076,
25  1090 (9th Cir. 2011) (defendant officers not liable where they were "responsible
26  neither for the decisions to use SWAT forces and nighttime service nor for the specific
27  tactical decision to perform a no-knock entry"); *Brown v. City & Cnty. of San*
28  *Francisco*, No. C 11-02162 LB, 2014 U.S. Dist. LEXIS 48386, at *34–35 (N.D. Cal.

3

Apr. 7, 2014) (deputy sheriff "was not an integral participant in the allegedly excessive force" used by other deputies where he participated in an "initial struggle," but "then walked up the hallway as the other deputies led Mr. Brown to [a] safety cell and . . . stood outside the doorway to the cell for a short time before walking away"; he "did not direct the other deputies"; and there was no "evidence that he had a prior awareness of a decision to use excessive force").

This is not a case in which DPS Does had advance notice of the alleged constitutional violations, like in *Boyd v. Benton County*, 374 F.3d 773 (9th Cir. 2004). There, the court concluded that specific police officers were "integral participant[s]" in the deployment of a "flash-bang" device inside plaintiff's apartment only where, among other things, the use of that device "was part of the search operation in which every officer participated in some meaningful way," and "every officer was aware of the decision to use the flash-bang, did not object to it, and participated in the search operation knowing the flash-bang was to be deployed." *Id.* at 780.

Nor is this a case like *Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989), in which the Fifth Circuit concluded that a specific sheriff's deputy was "a full, active participant in [a] search" where he "stood at the door" of a specific apartment, "armed with his gun while [another deputy] went into the apartment" to search it. *Id.* at 1186. Unlike in *Melear*, Plaintiffs here have not alleged facts showing that *any* individual DPS Doe was a "full, active participant" in the alleged use of excessive force by LAPD.[2]

At most, Plaintiffs have alleged that a group of DPS Does provided "crowd control," which the Ninth Circuit has held is not sufficient to show liability under

---

[2] As the Motion explains and Plaintiffs do not dispute (Doc. 54 at 7), this also is not a case like *Felarca v. Birgeneau*, Case No. 11-CV-5719 YGR, 2014 WL 206762 (N.D. Cal. Jan. 17, 2014), in which the plaintiffs alleged specific facts showing that particular University of California administrators were aware of police officers' apparent use of excessive force during an afternoon raid but nonetheless "order[ed] police, or allow[ed] them to continue with, a use of force and arrests in the evening raid." *Id.* at *5.

section 1983. *Blankenhorn*, 485 F.3d at 481. And whatever the rule may be in the Fifth Circuit (*see James ex rel. James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (concluding, virtually without analysis, that a group of officers who "remained armed on the premises throughout [an] entire search" were "integral to the search"), the Ninth Circuit has repeatedly emphasized that "individual officers" may not be found "liable for merely being present at the scene." *Jones*, 297 F.3d at 936 (citing *Chuman*, 76 F.3d at 295).[3]

### 2. Plaintiffs' Failure to Intervene Cause of Action Should Be Dismissed.

Plaintiffs' third cause of action, for failure to intervene, also should be dismissed with prejudice.

***First***, while Plaintiffs insist that DPS Does had a duty to intervene because they "were acting as state police officers on the night in question" (Doc. 56 at 10), they still have not pointed to a single case holding that private security officers, even if acting under color of state law, have a duty to intercede to prevent alleged unconstitutional conduct on the part of police officers.

***Second***, although Plaintiffs acknowledge that police "officers can be held liable for failing to intercede only if they had an opportunity to intercede," *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (*see* Doc. 56 at 11), they still cannot point to any facts to show that any individual DPS Doe actually had a "realistic opportunity" to intervene but failed to do so.

Plaintiffs generically assert that their "arrests took place in full view of the USC DPS Does participating in the skirmish line." Doc. 56 at 11. And they contend that "Plaintiffs Jackson, Wang, and Vinson's arrests each took place no more than fifteen to twenty feet away from one USC DPS Doe in particular." *Id.* But Plaintiffs still do not

---

[3] Nothing in *Chuman*, *Jones*, or their progeny suggests that a different rule applies if police officers are "armed"—nor could it. Police officers are virtually always armed, so a rule under which a police officer's *armed* presence is enough to establish liability under section 1983 would effectively mean that his or her *mere* presence is enough, a proposition the Ninth Circuit has squarely rejected.

5

allege facts showing that any DPS Doe knew or could have known that the force LAPD officers were allegedly using was unconstitutionally excessive under the circumstances, or even that any DPS Doe knew anything about the specific events that precipitated Plaintiffs' arrests. *See Ramirez v. Butte-Silver Bow Cnty.*, 298 F.3d 1022, 1029–30 (9th Cir. 2002) (even bystander police officers have a duty to intervene to prevent a violation only when they know or have reason to know it is a constitutional violation). They do not explain, for example, how any DPS Doe could have known why certain LAPD officers found it necessary to arrest Ms. Vinson or restrain her. *See id.*; SAC ¶¶ 54, 47.

Nor do Plaintiffs even attempt to explain the internally contradictory allegation in their SAC that "[d]uring [Mr.] Jackson's arrest a USC DPS Doe Defendant pulled up in his marked patrol vehicle, got out, and stood with his hand on his gun no more than fifteen feet away, and watched the entire arrest take place." SAC ¶ 45. As the Motion explains, the DPS Doe who "pulled up in his marked patrol vehicle" "*[d]uring*" Mr. Jackson's arrest could not have watched the entire arrest and certainly could not have prevented it. Doc. 54 at 10.

And Plaintiffs cite no authority for their assertion that the question of whether any individual DPS Doe had a realistic opportunity to intervene is "a factual dispute that cannot be determined as a matter of law at the pleadings stage." Doc. 56 at 11. They are simply wrong. Where, as here, plaintiffs fail to plead facts showing that an individual defendant had a duty and a realistic opportunity to intervene but failed to do so, their claim must be dismissed. *See, e.g.*, *Adams v. Kraft*, No. 5:10-CV-00602-LHK, 2011 WL 3240598, at *21–22 (N.D. Cal. July 29, 2011) (dismissing a second amended complaint with prejudice where plaintiff failed to make "actual factual allegations regarding [state park rangers'] opportunity to intervene or their exact role in Plaintiff's arrest"); *Nelson v. City of Los Angeles*, No. CV 11-5407-PSG (JPR), 2014 WL 6066053, at *11 (C.D. Cal. Nov. 13, 2014) (dismissing a claim for failure to intervene where plaintiffs "alleged no facts showing that [LAPD detectives] had any

'reasonable opportunity'" to "prevent [the plaintiff] from being kicked in the face," and where "[n]othing alleges that any other Defendant knew the kick was going to happen beforehand and somehow could have prevented it").

### 3. Plaintiffs' *Monell* Claim Against USC Should Be Dismissed.

Plaintiffs "concede outright that Chief Thomas should be dismissed from the *Monell* cause of action." Doc. 56 at 12 n.2. And because they cannot point to facts sufficient to support their *Monell* claim against USC, that cause of action also should be dismissed with prejudice.

As USC's Motion explains, a private entity can be held liable under section 1983 only if a "constitutional violation [was] caused by 'a policy, practice, or custom of the entity,' . . . or [was] the result of an order by a policy-making officer." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012). Plaintiffs have not even suggested that Chief Thomas somehow "ordered" the constitutional violations they allege occurred. And Plaintiffs still do not contend that USC had a formal policy that caused the violations about which they complain.

Instead, Plaintiffs assert that USC is liable under *Monell* "for having a pattern, practice and custom of unequal treatment of African-American students by DPS officers." Doc. 56 at 13. The SAC fails to allege facts showing any such thing.

"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). And "there must be 'a direct causal link between [an entity's] policy or custom and the alleged constitutional deprivation.'" *Villegas v. Gilroy Garlic Festival Assn.*, 541 F.3d 950, 957 (9th Cir. 2008).

Here, Plaintiffs allege in their Opposition that "during the 2012–2013 school year alone, . . . there were at least five incidents where LAPD, at the direction of USC's DPS, singled-out African-American students for excessive and unnecessary

7

police interference." Doc. 56 at 13 (citing SAC ¶¶ 156–57). But the SAC does not allege as much. Rather, the SAC alleges without any detail that, "[u]pon information and belief, . . . that the *LAPD* has responded to at least five minority student parties on or near the USC campus, and within USC DPS patrol territory, with an excessive *showing* of force in the 2012–2013 school year alone." SAC ¶ 156 (emphasis added). Plaintiffs do not—and cannot truthfully—allege facts showing that LAPD was somehow acting at USC's "direction" on any of those supposed occasions, much less all five. And while they allege that LAPD responded with an "excessive showing of force" (*id.*; Doc. 56 at 8), they do not allege that LAPD actually *used* any force during any of those incidents. Plaintiffs also have alleged that in April 2013, "*LAPD* showed up in riot gear to a peaceful, non-violent and law abiding party of African-American USC students" and assert, without any basis in fact, that USC somehow "prompted" "*LAPD*'s aggressive and excessive responses." SAC ¶ 116 (emphases added). Yet Plaintiffs do not and cannot plead any facts even suggesting that any LAPD officer— let alone any DPS officer—used excessive force in April 2013 or on any prior occasion. And, as the Motion explains, *LAPD officers'* conduct at any of those times obviously cannot support *Monell* liability against *USC*. *E.g.*, Burns v. City of Concord, No. C 14-00535 LB, 2014 WL 5794629, at *16 (N.D. Cal. Nov. 6, 2014) ("allegations that the Contra Costa County District Attorney's Office and the City of Antioch failed to train *their own investigators and officers* because of the *Concord Police Officers'* . . . propensity to use excessive force, do not support a claim against the Contra Costa County District Attorney's Office and the City of Antioch").

Still unable to show an actual policy or custom, Plaintiffs assert that USC is liable under *Monell* because Chief Thomas was "deliberate[ly] indifferen[t]" to Plaintiffs' rights. Doc. 56 at 15. Plaintiffs still do not point to any facts sufficient to meet that "stringent standard of fault." *Board of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). Instead, they assert that Chief Thomas "fail[ed] to act, despite abundant notice that his subordinates were inflicting constitutional harms on

8

minority students." Doc. 56 at 15.[4]  But in their Opposition, as in the SAC, Plaintiffs' baseless conclusions are no substitute for *facts* showing the kind of "pattern of similar constitutional violations by untrained employees [that] is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011).

### 4. Plaintiffs' Equal Protection Cause of Action Should Be Dismissed.

Plaintiffs' Opposition also confirms that their fifth cause of action, for racial discrimination and deprivation of equal protection, should be dismissed with prejudice.

***First***, although Plaintiffs assert the unsupported conclusion that a group of DPS Does "purposefully targeted *only* African-American and racial minority students for police harassment, interference, arrest, and dis[per]sement," and quote the unfounded opinions of two "percipient witnesses" regarding the night at issue (Doc. 56 at 16–17), Plaintiffs still do not point to any facts showing that any individual DPS Doe actually engaged in discriminatory conduct on the night at issue.  As the Motion explains, Plaintiffs' "naked assertion[s]" of bias, "devoid of 'further factual enhancement,'" do not "suffice" to support Plaintiffs' equal-protection cause of action—especially against private security officers.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Moreover, as this Court has explained, to state a claim under section 1983, "each plaintiff must allege that a *specific defendant* . . . deprived him or her of a right guaranteed under the Constitution or a federal statute" (Doc. 30 at 8 (emphasis added)), so Plaintiffs' unsupported assertions about a *group* of DPS Does' conduct is insufficient to state a

---

[4] Similarly unsupported by factual allegations are Plaintiffs' threadbare assertions that "[n]o actions were taken to curtail the problem," and that "[n]o investigations were performed or procedures or policies implemented . . . to address the unequal treatment of minorities." Doc. 56 at 13–14.  And far from "illustrat[ing]" that "racial tensions continued to rise completely unaddressed by USC's DPS," Plaintiffs' assertion that *USC* "schedul[ed] a Town Hall Meeting for May 7, 2013, to publicly discuss the racial discrimination felt by minority USC students" actually demonstrates the opposite.  *Id.* at 14.

1  cause of action.⁵

2  ***Second***, Plaintiffs still cannot point to any facts showing that Chief Thomas can
3  be liable as a supervisor under section 1983. "A supervisor may be liable if there
4  exists either (1) his or her personal involvement in the constitutional deprivation, or
5  (2) a sufficient causal connection between the supervisor's wrongful conduct and the
6  constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). As the
7  Motion explains, the SAC does not allege facts suggesting that Chief Thomas was
8  even present on the night in question, let alone that he was personally involved in or
9  caused the supposed misconduct at issue. Doc. 54 at 14.

10  Plaintiffs have no real response. Their Opposition vaguely asserts that "Chief
11  Thomas received numerous complaints from the black student community . . . in the
12  years and months leading up to" the night in question; reasserts without any basis in
13  fact that "there were at a minimum five incidents of excessive *showing* of police force
14  and interference of minority USC students *by LAPD*," supposedly "prompt[ed]" by
15  USC's "exaggerated reporting"; and again asserts that "Chief Thomas failed to take
16  action to institute policies or procedures" in response. Doc. 56 at 18 (emphasis added).
17  But such "[v]ague and conclusory allegations of . . . civil rights violations are not
18  sufficient to withstand a motion to dismiss. *Ivey v. Bd. of Regents of the Univ. of*
19  *Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). And even if Plaintiffs' unsupported
20  conclusions were true, they still would not show that Chief Thomas was personally
21  involved in or actually caused whatever misconduct occurred on the night in question.

22  Moreover, as the USC Defendants explained and Plaintiffs do not dispute, the
23  gravamen of Plaintiffs' claim is that racial animus motivated the excessive force *LAPD*

---

⁵ Plaintiffs' tortured explanation of why their "team effort" allegations about DPS Does' conduct should pass muster (Doc. 56 at 17 n.4), finds no support in either this Court's clear statement of the governing law or the Ninth Circuit's repeated rejection of the "team effort" approach to liability. As the Ninth Circuit explained in *Jones*, "to find individual officers liable [under section 1983] when there is no evidence to link them to specific actions would [be] erroneous as a matter of law." *Jones*, 297 F.3d at 937 (citing *Chuman*, 76 F.3d at 294).

*officers* allegedly used—not that Chief Thomas or any individual DPS Doe actually acted with a discriminatory purpose.  And neither Chief Thomas nor any DPS Doe can defend himself against Plaintiffs' allegations of racial discrimination in the absence of facts showing what actions or inactions supposedly constituted that discrimination. *See Jones*, 297 F.3d at 935.

**B.     Plaintiffs' Unruh Act Cause of Action Should Be Dismissed.**

Plaintiffs' Opposition also makes clear that their claim for violation of the Unruh Act should be dismissed with prejudice.  As this Court explained, "in order to state an independent violation of the Unruh Act, plaintiffs must plead 'intentional discrimination in public accommodations.'"  Doc. 30 at 10 (quoting *Greater Los Angeles Agency on Deafness, Inc. v. CNN, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014)).) "[T]he Unruh Act applies only to 'willful, affirmative misconduct on the part of those who violate the Act.'"  *Id.* (quoting *Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824, 853 (2005)).  And "in order to successfully establish a violation of the Unruh Act, a plaintiff must plead more than the disparate impact of a facially neutral policy." *Id.* (citing *Koebke*, 36 Cal. 4th at 854).

**1.     Plaintiffs Do Not Allege Willful and Affirmative Misconduct.**

Notwithstanding this Court's clear statement of the law, Plaintiffs contend—astonishingly—that USC "incorrectly argue[s] that Plaintiffs must allege 'wrongful or affirmative conduct' . . . , which is another way of saying 'intentional discrimination in public accommodations."  Doc. 56 at 19.  Then, without citing a single paragraph of the SAC, Plaintiffs assert that they "have alleged *facially discriminatory conduct* on the part of [USC]," because USC supposedly "singled out Plaintiffs, who were similarly situated with their Caucasian peers across the street in all ways except for race, for police interference and arrest."  *Id*.

But these assertions, like the threadbare allegations in the SAC, are inadequate to state a claim under the Unruh Act for the same reason the Court dismissed Plaintiffs' original Complaint:  Rather than make any "factual allegations of any

willful, affirmative misconduct by USC," Plaintiffs have merely alleged the "bare assertions that unspecific 'agents' of USC set in motion a policy that caused LAPD officers to specifically target minority students." Doc. 30 at 11; *see, e.g.*, SAC ¶ 210 (alleging, "upon information and belief," that USC had a "desire to specifically target African-American and minority students"); *id.* ¶ 212 (asserting that DPS Does "targeted Plaintiffs as minority and African American students for unnecessary police interference and arrest, despite full knowledge that similarly situated Caucasian students resided across the street, in violation of the same presumptive violations Plaintiffs were purportedly in violation of (noise complaint)").[6]

And now as before, the SAC's "factual allegations, at best, are merely consistent with a policy that LAPD intentionally targeted parties frequented by African American and minority students." Doc. 30 at 11. "[P]laintiffs' factual allegations [still] do not permit the Court to infer more than the mere possibility of misconduct" such that the SAC "fails to show that plaintiffs are entitled to relief on their Unruh Act claim." *Id.* (citing *Iqbal*, 556 U.S. at 679).

### 2. Plaintiffs Do Not Allege They Were Denied Applicable Benefits.

Plaintiffs' Opposition also confirms that they cannot show that the events they describe are the kind for which the Unruh Act provides a cause of action. While suggest that that "policing 'services'" are a "service" or "accommodation" under the Unruh Act, they still do not contend they were denied any such "policing 'services'" on account of race. Doc. 56 at 20; *see also* SAC ¶ 207. They do not allege, for example, that they received too few "protective [police] resources for racial reasons."

---

[6] Plaintiffs apparently have abandoned their specious "allegations of a 'pattern and practice of discriminating against African-American and minority students'," which "refer[red] to another incident in which LAPD officers disbanded minority students [without the use of force], one other prior incident in which LAPD officers treated a primarily Caucasian party differently, and one comment from an LAPD officer taken from an unauthenticated video in which the LAPD officer purportedly said that 'When USC calls us, this is how we show up.'" Doc. 30 at 10 (quoting Compl. at 16–17, 36).

*Gates v. Superior Court*, 32 Cal. App. 4th 481, 494 (1995).  And protection from "police scrutiny," as the Motion explains, is not an accommodation or benefit that the Unruh Act protects.  Doc. 54 at 19.

### 3. Plaintiffs Cannot Show Causation.

Finally, Plaintiffs' Opposition not only makes clear that they cannot allege facts showing a causal connection between USC's supposed discrimination in the form of police scrutiny and the damages Plaintiffs supposedly suffered; it asserts that they need not do so.  Instead, Plaintiffs claim they "need only allege and ultimately prove a denial of equal services in public accommodations."  Doc. 56 at 21.  But Plaintiffs obviously must plead facts in support of *every* element of their claim.  Judicial Council of Cal., Civil Jury Instructions No. 3060 (2012).  And while Plaintiffs wildly speculate, without any basis in fact, that "Defendants' violations of the Unruh Act contributed in a substantial way to the racially charged events of May 4, 2013, and Plaintiffs' eventual arrests" (Doc. 56 at 21), their Opposition only confirms that they cannot plead any facts showing causation.

## III.   CONCLUSION

Each of Plaintiffs' claims against the USC Defendants should be dismissed with prejudice.  Plaintiffs have conceded that their *Monell* claim against Chief Thomas fails as a matter of law; they have effectively abandoned their causes of action for intentional infliction of emotional distress, assault, false promise, and negligent misrepresentation; and their Opposition makes clear that they cannot plead facts sufficient to state any cause of action under section 1983 or the Unruh Act.

Dated: March 3, 2015                    GIBSON, DUNN & CRUTCHER LLP

By: /s/ Debra Wong Yang
        Debra Wong Yang

Attorneys for Defendants
UNIVERSITY OF SOUTHERN CALIFORNIA
and CHIEF JOHN THOMAS

101879870.5